Argued and submitted December 7, 1987, reversed as to defendant MacGregor
August 24, 1988

TREASURE VALLEY BANK,
*Respondent,*

*v.*

LONG et al,
*Defendants,*
*and*

MacGREGOR,
*Appellant.*

(85-10-20,566 E; CA A42660)

759 P2d 1108

Gordon R. Hanna, Salem, argued the cause for appellant. With him on the briefs was Churchill, Leonard, Brown & Donaldson, Salem.

William F. Nichols, Nyssa, argued the cause for respondent. With him on the brief was Stunz, Fonda, Pratt, Nichols, Kiyuna & Okai, Nyssa.

Before Richardson, Presiding Judge, Joseph, Chief Judge,* and Deits, Judge.

RICHARDSON, P. J.

---

* Joseph, C. J., *vice* Newman, J.

## RICHARDSON, P. J.

Plaintiff, the seller under a land sale contract, brought this action for specific performance of the contract against the purchasers and their assignees. The court granted specific performance, ordered a sheriff's sale and awarded plaintiff a judgment against all of the purchasers and their assignees if there was a deficiency. Defendant MacGregor, an assignee of a purchaser's interest in the contract, is the only defendant who appeals. He contends that he did not assume his assignor's obligations under the contract and therefore cannot be held liable for a deficiency judgment.

The matter was tried to the court on stipulated facts. Ella Kohler contracted to sell the real property to William Crane, Ronald Clayton and Dean Crane. Kohler later assigned her seller's interest to plaintiff as security for a loan, and plaintiff eventually obtained all of the seller's interest by foreclosure. Viewpoint Properties, Inc., obtained the purchaser's rights and obligations under the contract after a series of transactions and assigned its interest in the contract to defendant.

Defendant's affidavit, which was received by stipulation, explained the assignment:

"4.  At the time of the assignment Viewpoint Properties was insolvent. The assignment was designed to allow me to salvage some of the money I was losing as a result of the Viewpoint Properties insolvency. I calculated that if I could gain some advantage, so be it. If I could not gain an advantage, I could not hurt Viewpoint Properties if I defaulted.

"5.  Viewpoint Properties did not demand that I assume the contract obligation, and, if they had, I would not have taken the assignment. Viewpoint Properties did not demand indemnity from the contract and I was unwilling to supply it. My only interest in the property was to try to salvage something from my loss. I never agreed to be personally liable on the debt. In fact, it was agreed between Viewpoint Properties and I that I would not become personally liable upon the contract assigned."

The president of Viewpoint Properties submitted an affidavit which was to the same effect.

After the assignment, defendant paid a total of $38,152 to plaintiff on the contract. He also leased some of the

farm land, a dog kennel and a residence and sold an option for mineral exploration. He received about $9,200 for the leases and the option. Because defendant was the only person making payments on the contract, the contract was declared in default when he ceased doing so, the balance due was accelerated and this action was commenced.

In his first assignment, defendant contends that the court erred by denying his motion to strike the "claim of personal liability against him for the land sale contract balance." The complaint alleged only that defendant was an assignee of a purchaser's interest. His principal argument is that a bare assignment of that type is not sufficient to impose liability on the assignee and, therefore, the allegation was insufficient. The parties tried the case fully, and it is here on *de novo* review; consequently, even if the allegation is insufficient, there is no reason to reverse on that assignment of error. We need not address the merits of the first assignment.

The other three assignments relate to the court's conclusions regarding defendant's liability, and all three raise the same issue: whether, under the stipulated facts, defendant assumed the purchasers' obligations on the land sale contract. We address them together.

■ ■ Either party to a land sale contract may normally have specific performance. *Wittick v. Miles,* 274 Or 1, 545 P2d 121 (1976). A seller's rights against the purchaser's assignee arise from the seller's status as a third party beneficiary of the assignment contract. *Kunzman v. Thorsen,* 303 Or 600, 740 P2d 754 (1987). The scope of the assignment defines the relief available to the seller. As the court said in *Kunzman:*

> "In essence, the vendor's action is one for specific performance of the assignee's agreement to assume the vendee's duties." 303 Or at 603.

Thus, the dispute here is about the interpretation of the assignment between Viewpoint Properties and defendant. The assignment contains nothing to the effect that defendant agreed to assume or not assume Viewpoint Properties' obligations under the contract.

■ ■ The assignee of a contract for the purchase of land assumes no liability by reason of the assignment alone. *Hodges et ux v. Servine et ux,* 211 Or 428, 437, 316 P2d 312 (1957).

Where the assignee claims "the benefits of the contract," however, an inference arises that he intended to assume the contract's obligations as well.

In *Kunzman v. Thorsen, supra,* the court described the process of interpreting a contract of assignment when it is silent as to the assignee's obligations:

> "From this mash of precedent we distill the following principle: An asignee 'claims the benefits' of a land sale contract when he or she exercises the rights in the contract's subject matter conferred upon the vendee by the contract. Where a party accepts a broadly worded assignment of a land sale contract, 'steps into the shoes' of the assignor and asserts the interests the contract conveys, the presumption arises that the assignee intended also to assume the duties the contract imposes.
>
> "* * * * *
>
> "Accepting the benefits of a contract does not *impose* liability on an assignee. The *Hodges* rule is a rule of construction only. It considers the probable intent of the parties at the time the assignment was made for the purpose of determining whether expansive words of the assignment imply an assumption of duties by the assignee. Where the parties clearly intend otherwise (as evinced either by the terms of the assignment or by the surrounding circumstances, *e.g.,* an assignment for security), the implication that the assignee assumed the vendor's [*sic*] contractual duties is dispelled." 303 Or at 610. (Emphasis in original.)

Defendant concedes that paying the contract payments for a period of time, leasing parts of the property and selling a mineral exploration option were sufficient economic exploitations to constitute a claim of the benefits of the contract. The question is whether the facts surrounding the assignment dispell the implication that defendant assumed the obligations. On *de novo* review, we conclude that they do.

■   The affidavits of defendant and the president of Viewpoint Properties were received by stipulation. There is no contradictory evidence. The essence of the affidavits is that defendant accepted the assignment in order to recoup some of the money owed to him by Viewpoint Properties and that it was expressly agreed that defendant would not have any obligations to make payments on the land sale contract. We conclude that defendant did not intend to assume the obligations

of the purchasers under the contract and, therefore, he cannot be held liable for any payment due to plaintiff under the contract or any deficiency after distribution of the proceeds of the sheriff's sale.

Reversed as to defendant MacGregor.